FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 26 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff | ) |
| v. | ) CASE No. 08-CR-76(S-1)-03 |
| JEROME BRANCATO Defendant | ) |

The recommendation of probation and the U.S. attorney is respectfully accepted
JBW
9/15/11

**MOTION FOR EARLY TERMINATION OF SUPERVISED RELEASE PURSUANT TO 18 U.S.C. § 3583(e)(1)**

**COMES NOW** the Defendant, **JEROME BRANCATO,** *pro se*, and makes this Motion for Early Termination of Supervised Release pursuant to 18 U.S.C. § 3583(e)(1) to allow this Defendant to freely take trips outside the Eastern District of New Jersey (his probation district) to freely travel between the Florida, New Jersey, and outside the United States to visit family living in various locals in the United States in the United States and Canada. In support of this Motion, Defendant Brancato states as follows:

1. On June 4, 2008, I pled guilty in this Court before Magistrate Judge Robert M. Levy in Case #08-CR-76(S-1)-03, to Count 68 of the superseding indictment pursuant to a plea agreement I made with the government.

2. On April 17, 2009, the Judge Jack B. Weinstein sentenced me in the aforementioned case to 15 months imprisonment and 3 years supervised release.

3. On June 19, 2009, I self-surrendered to the Federal Bureau of Prisons (BOP) at FCI Butner in North Carolina. I was sent to FCI Butner because they have medical facilities for an older inmate like me (I am 83 years old) with a history of heart and knee problems.



4. I ended up serving 13 months in Butner's medium security facility. Luckily during this time I did not have any major medical problems and was able to manage my health without incident. While at Butner, I maintained clear conduct with no write ups. On August 20, 2010, I was given pre-release to a Residential Reentry Center (RRC). They immediately put me on home confinement until my release from BOP custody on September 3, 2010. After 14 ½ months in BOP custody with a record of clear conduct, I have now completed one year of supervised release, also without incident.

5. I am serving my supervised release in the Eastern District of New Jersey under the supervision of Senior Supervisory United States Probation Officer (USPO) Nancy Hilder. Per the requirements of my supervised release, I submit a report to her once a month. I also speak to her via telephone twice a week when I have been given permission by her to travel outside my probation district.

6. I was originally supposed to serve my supervised release in the Eastern District of New York where I had arranged to stay with relatives on my wife's side of the family. Shortly after my release to the Easter District of New York, however, I asked and received permission for my supervised release to be served in Eastern District of New Jersey so that I could instead stay with my son in his house in Howell, NJ. He is recently separated from his wife and needed some help caring for his three children. He has had to take on both parental roles ever since his wife left him with all the responsibility for caring for his three sons. My wife and I were in a position to take an active role in the care of our grandchildren to support our son so we figured it was the least we could do under the circumstances of our son's separation from his wife

7. In addition to being able to help my son, my change of judicial district also allowed me to be farther away from the Eastern District of New York where I committed my regrettable crime in the instant case. Indeed, these days, the only time I am in Brooklyn, New York is when I have an appointment with my physician.

8. My health is something that I struggle with on a daily basis - especially during the winter months. I am 83 years old. I have an irregular heartbeat for which I take a prescription of Pradaxa. Specifically, Pradaxa is used to prevent stroke and blood clots in patients with atrial fibrillation - such as myself. I also have an aneurism near my aorta which requires that I get ex-rayed every 6-7 months to check on its status. Doctors prefer to manage my aneurism by checking on its condition instead of treating it by way of surgery because they are afraid that such a procedure would be too life threatening for me given my age and irregular heartbeat. Moreover, I suffer from a bad knee which needs to be replaced.

9. During the winter months the cold weather takes its toll on my body. It seems that I am never able to feel warm regardless of whether I am at home in bed or outside. I believe that I am chronically cold because of my age and because of the medication that I am taking to manage my heart condition. I own a house in Fort Lauderdale, FL. With the permission of USPO Hilder, I was able to spend approximately 45 days there in February 2011 through March 2011. When I am there I visit with my daughter who lives close by in Highland Beach, FL. While in Florida I noticed that my health was a lot better because I was away from the cold of the Northeast and, therefore, not suffering from the aforementioned effects of my medication due to the cold. As a result, I was better able to manage my health and carry on a more productive lifestyle than I would have had I been in New Jersey where I live a more sedentary lifestyle during the winter months because of the cold temperatures.

10. I would like to have my supervised release terminated early so that I have the ability to spend the winter months in Florida, where there is a warmer climate that does aggravate my aforementioned medical conditions, and continue to spend the spring, summer and fall months in New Jersey so that I can still visit with my son and grandchildren and provide them with the support they need. In short, I would like the autonomy to move freely between these locales so I can be there for my son or daughter at a moment's notice.

11. I would also like to have my supervised release terminated because I would like to able to visit my brother who lives in Ottawa, Canada. We are very close to each other. I was able to see him once this past year when he came to New Jersey. I am not able to visit him in Canada because, under the conditions of my supervised release, I am not permitted to travel outside of the United States.

12. The United States Supreme Court has clearly distinguished a *custodial sentence*, where an offender is punished by Executive confinement, from Judicial oversight of rehabilitation through *supervised release*; once a defendant returns to his community from prison, the Court's focus necessarily shifts from punishment to positive community adjustment. *See United States v. Johnson*, 529 U.S. 53, 59 (2000) ("Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration.").

13. The Court's supervised release plan stands a decision separate (if not wholly independent) from the sentence-length calculations. *See, e.g., United States v. Marquez*, 941 F.2d 60, 64-65 (2d Cir. 1991) (discussing distinction between confinement and supervised release, and methods for tailoring supervised release to individual cases).

14. With a defendant's punitive custodial phase completed, the sentencing court's release plan ideally prevents recidivism through supervised rehabilitation and by re-establishing family ties while reintegrating the defendant into the community. Concerned about successful community adjustment in the first years of release, Congress presumed most released prisoners would need the Court's oversight to remain compliant and crime-free.

15. Accordingly, U.S.S.G. § 5D1.1(a) requires sentencing courts to "order a term of supervised release to follow imprisonment when a sentence of . . . more than one year is imposed, or when required by statute."

16. In the instant case, involving a Class C felony, U.S.S.G. § 5D1.2(a)(1) requires a supervised release term of at least 2 years but no more than 3 years (unlike the USSG, the U.S. Code is silent regarding the length of supervised release terms).

17. The Court was authorized at sentencing to order a three-year supervised release term; because rehabilitation is an ongoing process, however, the Court remains free to review its discretion to a my advantage (termination) as well as disadvantage (revocation).

18. As noted at 18 U.S.C. § 3583(e)(1), the Court may "terminate a term of supervised release and discharge the defendant released at <u>any time after the expiration of one year of supervised release</u> . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice."

19. 18 U.S.C. § 3583(e)(1) orders any court considering such a grace to first consider "the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), and (a)(6)," factors also relating to the defendant's sentence-length calculation. As respectfully submitted below, and in turn, my conduct and the interests of justice permit this Court to terminate my supervised release and to discharge me from my sentence.

20. The factor at 18 U.S.C. § 3553(a)(1) considers "the nature and circumstances of the offense and the history and characteristics of the defendant."

21. I do not here discount the seriousness of my instant offense, nor do I suggest that I did not deserve my punishment for my misconduct; however, I was punished with 15 months' imprisonment and three years' supervised release.

22. To date, I have served 14 ½ months in federal custody and 1 year of Supervised Release without ***any*** infraction.

23. With 18 U.S.C. § 3553(a)(2)(B), Congress asks the Court "to afford adequate deterrence to criminal conduct."

24. As addressed above, I was incarcerated for 14 ½ months. After this experience, I am deterred from ever again erring with anything but the most careful cautions. I just want to live my life in peace in spending time with my family far from my previous transgressions in the Eastern District of New York.

25. Throughout this experience, I have respectfully demonstrated my intent to obey all rules and conditions of my supervised release, not only for my own freedom's sake, but also so that I can avoid ever letting my wife and family down again.

26. The factor at 18 U.S.C. § 3553(a)(2)(C) asks the Court "to protect the public from further crimes of the defendant."

27. Through my conduct, I have demonstrated my commitment to a violation-free life, and now pose a negligible risk of recidivism; instead of showing any criminal intent, I have instead exemplified a successful correctional model by respecting the conditions of my supervised release and by exemplifying model behavior as a citizen and family man. I respectfully submit the public is at no risk of further misconduct on my part. Indeed, at my age, my priorities are to manage my health so that I can spend as much time with my family as possible.

28. Given the Court's assigned duty of overseeing my successful community reintegration, and measuring the official estimate of future dangerousness to the public, I respectfully submit that I have shown myself worthy of early supervised release termination through my incident free behavior during my incarceration and supervised release.

29. I accepted my required imprisonment, and did so with grace and exemplary conduct; I trust the reality of my sentence figures strongly into the Court's decision-making.

30. The factor at 18 U.S.C. § 3553(a)(5) contemplates "any pertinent policy statement issued by the Sentencing Commission . . . that is in effect on the date the defendant is sentenced."

31. The pertinent policy statements regarding mandatory imposition of Supervised Release are U.S.S.G. Ch. 5, Pt. D, and revocation of Supervised Release, U.S.S.G. Ch. 7.

32. Congress addressed Supervised Release termination statutorily, and the U.S.S.G. offers limited application.

33. The factor at 18 U.S.C. § 3553(a)(6) addresses "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

34. Early termination of Supervised Release will not create an unwarranted sentencing disparity, as the Court's discretion now focuses on preventing recidivism and helping me re-integrate with my community and does not bear on the executed custodial punishment.

35. Respectfully, this confluence of circumstances seems to be the very end desired by the Sentencing Commission, and as ordered by this Court on April 17, 2009. I trust the Court will see fit to terminate my supervised release.

**WHEREFORE,** the Defendant would request this Motion for Early Termination of Supervised Release pursuant to 18 U.S.C. § 3583(e)(1) be granted.

Respectfully submitted this September 8, 2011,

BY: [signature]

Jerome Brancato
20 Dayna Court
Howell, NJ 07731

**I HEREBY CERTIFY** that a copy of the foregoing has been furnished via U.S. mail to Roger Burlingame, Esq., United States Attorney's Office, 271 Cadman Plaza East, Brooklyn, NY 11201 this 8 day of September, 2011.

Jerome Brancato
20 Dayna Court
Howell, NJ 07731